**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC D. SMITH, | ) | CASE NO. 5:16CV02466 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Eric D. Smith ("Plaintiff" or "Smith"), challenges the final decision of

Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"),

denying his applications for Disability Insurance Benefits ("DIB"), and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423,

1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is

before the undersigned United States Magistrate Judge pursuant to an automatic referral under

Local Rule 72.2(b) for preparation of a Report and Recommendation.  For the reasons set forth

below, it is recommended that the Commissioner's final decision be AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

1

# I. PROCEDURAL HISTORY

In September 2013, Plaintiff filed applications for DIB and SSI alleging a disability onset date of December 30, 2005. (Transcript ("Tr.") 59). The alleged onset date was later amended to September 20, 2013. (Tr. 153). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 84, 90, 92).

On August 18, 2015, an ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 27). On August 31, 2015, the ALJ issued a written decision finding Plaintiff was not disabled. (Tr. 10). The ALJ's decision became final on August 11, 2016, when the Appeals Council declined further review. (Tr. 1).

On October 7, 2016, Plaintiff filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 13, 15, 16). Plaintiff asserts the following assignments of error:

> (1) The administrative law judge's residual functional capacity finding is not supported by substantial evidence where he discounts without adequate reasons the opinions of Consultative Examiner Comley, Psy.D., whose examination revealed disabling conditions
>
> (2) The administrative law judge erred as a matter of law in relying on the State agency reviewers' opinion where he did not weigh the supportability of the State agency opinion against new evidence submitted to the record.
>
> (3) The administrative law judge's residual functional capacity finding is not supported by substantial evidence where he failed to evaluate Plaintiff's symptoms under Social Security's own rules and regulations for the evaluation of subjective symptoms.

(Doc. No. 13 at 1)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in 1968 and was 44 years-old on the date his application was filed, making him a "younger" person under social security regulations. (Tr. 21). He has a high school education and is able to communicate in English. (*Id.*). Plaintiff previously owned a pizza shop, but for purposes of his disability determination, he has no past relevant work. (*Id.*).

### B. Medical Evidence

Plaintiff sought treatment on a number of occasions from Eugene Petrilla, D.O. On March 23, 2012, Plaintiff was assessed with chronic anxiety and panic disorder. (Tr. 500). Dr. Petrilla prescribed Xanax for anxiety and Clonidine for panic disorder. (*Id.*). On September 24, 2012, Plaintiff complained of worsening stress. (Tr. 502). He stated that he could not work due to his panic and ongoing worry, and he could not find a job due to a record of multiple felonies. (*Id.*). Dr. Petrilla encouraged Plaintiff to try to find work through human resources and to seek mental health counseling. (Tr. 503). His Xanax dose was increased. (Tr. 502). In March 2013, he again complained that he could not find a job because of his felony record, but he reported feeling better on the increased dose of Xanax. (Tr. 504). In September 2013, Plaintiff had a check-up, and he reported that he had been seeing a psychiatrist. (Tr. 507). Plaintiff presented to Dr. Petrilla in February 2014, complaining that nearly every day he felt down, depressed, or hopeless. He said that he had little interest in doing things; that he had sleep problems and little energy; that he felt bad about himself; and that he had trouble concentrating. (Tr. 526).

On March 19, 2014, Plaintiff's was seen by counselor Todd Curtis, M.S., LPC, who performed a diagnostic assessment. (Tr. 575). Plaintiff was reportedly agitated and unable to sit

still, and he showed poor grooming and poor eye contact. (Tr. 576). Plaintiff also showed poor frustration tolerance, poor impulse control, impaired judgment, angry/hostile mood and affect, preoccupation, and paranoid impulses. (Tr. 577). He exhibited risk factors for violence/homicide, including chronic ideation, previous violent behavior, poor impulse control, and being angry/hostile/enraged. (Tr. 578). A past suicide attempt was noted, but no present suicidal ideation. (Tr. 579). Plaintiff was diagnosed with agoraphobia with panic disorder and explosive personality disorder, and he was assigned a GAF score of 40. (Tr. 579). That same month, Dr. Petrilla wrote a letter stating that Plaintiff was unemployable for the next year due to medical illness. (Tr. 517).

On March 26, 2014, Mr. Curtis reported that Plaintiff was open and less angry. (Tr. 665). Plaintiff told Mr. Curtis that he was proud of himself that when engaging socially he avoided an altercation during a situation of potential conflict. (Tr. 665). In April 2014, Mr. Curtis noted that Plaintiff "demonstrates a level of paranoia but is in touch with reality." (Tr. 664). Plaintiff was "feeling more comfortable with the therapist and his trust level [was] rising." (*Id.*). In May 2014, Mr. Curtis noted that Plaintiff was fearful of situations where he may be judged or seen [by] others." (Tr. 660). In June, Plaintiff reported that he was recently in a fight but that it ended quickly and he was not arrested. (Tr. 657). A treatment summary from that time indicates that Plaintiff was improving and becoming more comfortable with his therapist. (Tr. 592).

In July 2014, Plaintiff saw his counselor and stated that he was ready to consider taking medication. (Tr. 653). That same month Plaintiff sought treatment from Dr. Patrilla, and he reported that he was seeing a counselor and a psychiatrist weekly. (Tr. 529). Dr. Petrilla noted that Plaintiff's examination was unremarkable, but he seemed on edge at times. (*Id.*). Plaintiff

was diagnosed with agoraphobia in addition to his previous diagnoses, and his Xanax dosage was increased. (*Id.*). Dr. Petrilla opined that Plaintiff was "still unemployable." (Tr. 529).

In August 2014, Plaintiff's counselor observed that Plaintiff was agitated, depressed, and negative, and he exhibited some paranoia. (Tr. 651). In September, Plaintiff presented with moderate anxiety, severe agitation, mild depression, and moderately impaired judgment. (Tr. 649). His counselor indicated that Plaintiff "gets frustrated when things do not go smoothly or his way." (*Id.*). A treatment summary from September indicates that Plaintiff was "doing a great job sharing and expressing his feelings." (Tr. 591).

On October 13, 2014, on referral from Plaintiff's counselor, Dr. Prasad performed an initial psychiatric assessment of Plaintiff. (Tr. 643-646). Plaintiff reported that "he has extreme difficulty getting along with people, cannot stand to be around them and is often very angry." (Tr. 643). Plaintiff also reported anxiety when he goes out, explaining that he goes to the grocery store early in the morning when no one was there. (*Id.*). He reported unexpected panic attacks accompanied by pounding heart, trembling, shaking, shortness of breath, chest discomfort, dizziness, lightheadedness, and fear of losing control. (Tr. 643). Dr. Prasad noted that Plaintiff had an irritable and anxious, but not uncooperative mood; that Plaintiff had phobias and paranoid delusions; and that Plaintiff was experiencing symptoms of agoraphobia, which was impairing his social functioning. (Tr. 644-646). Dr. Prasad diagnosed agoraphobia with panic attacks, intermittent explosive disorder, post traumatic stress disorder, and paranoid personality disorder. She assigned a GAF score of 55, indicating moderate symptoms. (Tr. 646). Plaintiff was resistant to trying medication, but he agreed to try the antidepressant Effexor. (Tr. 646).

During a follow up visit on October 27, 2014, Plaintiff expressed reluctance to take his medications. (Tr. 641). Dr. Prasad diagnosed Plaintiff with psychosis not otherwise specified, with a rule-out diagnosis of schizophrenia, paranoid type. (Tr. 642). He was prescribed olanzapine. (*Id.*).

On November 7, 2014, Plaintiff "appeared somewhat out of it due to his new meds." (Tr. 640). His counselor stated that Plaintiff believed his new doctor was "trying to kill him, perhaps not literally, but because of how the meds make him feel." (*Id.*). On November 10, Dr. Prasad diagnosed Plaintiff with schizoid personality disorder, and she increased his antidepressant and antipsychotic medications. (Tr. 639). In December 2014, Plaintiff reported that he was feeling better after medication adjustments; that he was going out in public a little; and that he was making an effort to be happier. (Tr. 632, 633, 635). Dr. Prasad reported that Plaintiff was stable with significant improvement. (Tr. 634).

In January 2015, Plaintiff reported that he had gone out to eat with a relative and almost got into a fight with a man who was hitting a woman. (Tr. 617). His counselor noted that Plaintiff appeared less anxious but some paranoia still existed. (*Id.*). In February 2015, Plaintiff complained that he was unable to sleep. (Tr. 613). March 2015, Plaintiff's counselor stated that Plaintiff "has shown great improvement over our time together." (Tr. 606). On March 26, 2015, Plaintiff reported having a pretty good winter until his father died five weeks earlier. (Tr. 539). In April 2015, Plaintiff reported that he rarely left the house because he did not like dealing with people. (Tr. 604). His counselor described him as "quite guarded and hostile." Plaintiff "threatened to take off and said 'you may never see me again.'" (Tr. 604).

In May 2015, the counselor noted severe depression and moderate anxiety. (Tr. 598). Plaintiff exhibited anxiety in relation to his upcoming disability hearing, and he reported suicidal ideation. (*Id.*). Plaintiff also discussed a conflict he had with a Vietnam veteran. (*Id.*). In June 2015, Plaintiff expressed frustration that he could no go outside with his eight year old son, because he was afraid someone would look at him and he would want to beat them. (Tr. 596). Plaintiff threatened to "destroy the court" if he was denied disability benefits. (*Id.*). The counselor noted that Plaintiff had a great deal of anxiety about the hearing. (Tr. 596).

The following week, Plaintiff presented to Dr. Prasad, stating that "if they turn me down, I am going to jail, and I don't care . . . I am not leaving the court room." (Tr. 620). Dr. Prasad noted that Plaintiff experienced persistent anxiety. (Tr. 621). On examination, Plaintiff was calm and cooperative, and fairly stable. (Tr. 621). Plaintiff continued on antidepressent and antipsychotic meidcations. Dr. Prasad recommended he continue with the antianxiety medications prescribed by his primary care physician and that he continue therapy. (Tr. 621).

**C.      Opinion Evidence**

*Dr. Comley*

In September 2013, John Comley, Psy.D., performed a consultative examination of Plaintiff at the request of the state agency. (Tr. 510). Dr. Comley noted that Plaintiff had been incarcerated for seven and a half years. (Tr. 510). In terms of appearance and behavior, Dr. Comley noted that Plaintiff was casually groomed and dressed; his demeanor was somewhat manipulative and preoccupied; and he was mistrustful and hypervigilant. (Tr. 511). In terms of affect and mood, Dr. Comley reported that Plaintiff's mood was anxious and depressed; that he was both dysphoric and apprehensive; that he tended to brood and tended to lack energy to cope

with his problems; that he tended to ruminate about his previous prison experience, suggesting that he had been sexually abused in one incident; that he lacked self-confidence; and that experienced tension and difficulties with concentration, attention, and memory. (Tr. 512).

In terms of anxiety, Dr. Comley reported that Plaintiff did not feel comfortable around others; that he had alternative beliefs about social convention and social standards; that there was considerable social alienation; that he was high strung and more sensitive than others; that he felt persecuted, misunderstood, and treated unfairly by family, school, police, and prison. (Tr. 512). In terms of personality, Dr. Comley noted that Plaintiff's panic attacks interfered with his relationships; that he had become unpredictable, contrary, and manipulative; that he was unable to cope with adult demands; and that he retreated to adolescent ways to deal with life. In terms of insight and judgment, Dr. Comley noted that Plaintiff overreacts and he feels little concern about the opinions, values, and attitudes of others. (Tr. 512).

Diagnoses consisted of dysthymic disorder, panic disorder, and personality disorder, not otherwise specified, with antisocial and borderline features. (Tr. 512). Plaintiff was assigned a GAF score of 49. (Tr. 512).

Dr. Comley opined that Plaintiff was moderately limited in the following work related abilities: to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to set realistic goals or make

plans independently of others.  (Tr. 509).  He further opined that Plaintiff was markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors and that Plaintiff was unemployable and that his limitations would last 12 months or more.  (*Id.*).

In conclusion, Dr. Comley stated that "the opinions rendered are based upon my review of the medical records, applicant history, and my psychological evaluation.  All opinions are made with reasonable degree of medical certainty."  (Tr. 513).

*State Agency Reviewers*

State reviewing psychologists Janet Souter, Psy. D, and Tonnie Hoyle, Psy. D, reviewed the record and opined that Plaintiff had moderate restrictions in carrying out activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and had no episodes of decompensation.  (Tr. 63, 76). They further opined that Plaintiff was able to handle social interactions with moderate limitations, and that limitations from stress intolerance and anxiety require work that did not impose stringent pace/production expectations.  (Tr. 64, 66, 78).  Dr. Hoyle opined that he was capable of understanding and remembering simple to moderately complex (3-4 step) work instructions.  (Tr. 78).

**D.     Hearing Testimony**

During the hearing, Plaintiff testified to the following:

- He testified that he lives alone.  His eight-year-old son visits him every few weeks.  (Tr. 32-33).  He does not leave his house unless he absolutely has to. (Tr. 36-37).  He makes excuses to his son about why they do not go anywhere. (Tr. 41, 44).  His sister visits him sometimes.  He looks forward to her coming, but 15 minutes after she arrives, he is ready for her to leave.  (Tr. 37).

- He goes shopping when there are the least number of people.  He knows what cars the workers at Save-a-Lot drive, so he can judge by the cars in the parking lot how many workers and other customers are in the store.  Often he waits until

someone comes out of the store before he goes in. Once inside, he gets what he needs and goes straight back out again. (*Id.*).

• Several times, he has walked away from his cart and left the store. (Tr. 39). When he goes to the grocery store, he knows that the people are looking at him and staring at him. (Tr. 62).

• Five or six months before the hearing, he tried going to a restaurant with his uncle, but almost got into a fight with someone and had to leave. (Tr. 40-41, 45). He has broken things at home. The last time was a week before the hearing, when he "smashed where the telephone thing goes into the wall." (Tr. 45-46).

• Seeing a therapist and a psychiatrist was helping a little bit. (Tr. 44-45). When he goes for an appointment, if there are too many people in the waiting room, he will go outside. They know to come out to the parking lot to find him if they do not see him in the waiting room. (Tr. 50-51).

While noting that Plaintiff previously owned a pizza shop, the ALJ concluded that Plaintiff had no past relevant work for purposes of a disability analysis. The ALJ described the following hypothetical person to the VE:

This person would have the following non-exertional limitations. Occasional ladders and scaffolds, no unprotected heights, no moving mechanical parts, and this person would be limited to perform simple, routine and repetitive tasks but not at a production rate pace. This person would have occasional contact with supervisors, occasional contact with coworkers and occasional contact with the public. Can the hypothetical individual perform any jobs?

(Tr. 54). The VE explained that the hypothetical individual would be able to perform representative jobs in the economy, such as laundry worker, wire worker, and electronics worker. (Tr. 55).

### III. STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since September 20, 2013, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: Depression, panic disorder, agoraphobia, and explosive personality (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ladders and scaffolds; no unprotected heights, no moving mechanical parts and is limited to simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work); he can have occasional contact with supervisors, occasional contact with coworkers but no contact with the public.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on November 10, 1968 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since September 20, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-22).

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been

defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

(6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if

supported by substantial evidence, however, a decision of the Commissioner will not be upheld

where the SSA fails to follow its own regulations and where that error prejudices a claimant on

the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough

evidence in the record to support the decision, [where] the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Fleischer v.*

*Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307

(7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If

relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely

overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v.*

*Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.

Ohio July 9, 2010).

## VI.  ANALYSIS

**A.      Whether the ALJ properly weighed the opinion of consultative examiner Dr.
Comley**

Plaintiff maintains that the ALJ's decision to afford the opinion of consultative

examiner Dr. Comley "some weight" is not supported by substantial evidence.

The ALJ addressed Dr. Comley's opinion, as follows:

As for the opinion evidence, I give some weight to the psychological consultative
examination and mental residual functional capacity assessment by Dr. Comley.
However, his opinion regarding marked limitations in accepting instructions and
responding appropriately to criticism is based on the claimant's statements rather than
clinical assessment established over a period of time.

(Tr. 20).

14

Plaintiff takes issue with the ALJ's failure to adopt Dr. Comley's assessment that Plaintiff is markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors. Plaintiff maintains that this limitation is important because under the Social Security Ruling 85-15, the ability to respond appropriately to supervision is an essential part of performing unskilled work:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.
>
> * * *
>
> [A]n individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons.

SSR 85-15, 1985 WL 56857, at *4-7. Thus, Plaintiff argues, had the ALJ found Plaintiff markedly limited in his ability to tolerate supervision, it would have been work-preclusive.

Plaintiff argues that the ALJ's reasoning for assigning "some weight" to Dr. Conley's opinion is flawed. (Doc. 13 at 15). The ALJ concluded that Dr. Comley's opinion is deficient because it is based on Plaintiff's own "statements rather than clinical assessment established over a period of time." (Tr. 20). Plaintiff argues that this reasoning fails to distinguish between the personal information provided by Plaintiff and the clinical assessment provided by Dr. Comley. Plaintiff points out that Dr. Comley's clinical assessment includes the conclusions that Plaintiff seemed to have alternative beliefs about social convention and social standards; that

Plaintiff's demeanor was somewhat manipulative and preoccupied; that Plaintiff was mistrustful and hypervigilant; that Plaintiff appeared high-strung and more sensitive than others; that he retreats into adolescent ways to deal with life, when under stress or unable to cope with adult demands; that he overreacts and feels little concern about the opinions, values, and attitudes of others; and that his judgment is affect by anxiety and depression. (Doc. 13 at 16). Plaintiff maintains that these observations by Dr. Comley support his assessment that Plaintiff was markedly limited in the ability to accept instructions and respond appropriately to criticism. (Doc. 13 at 15). Plaintiff further asserts that this marked limitation is also supported by Plaintiff's mental health treatment records from Plaintiff's counselors and his psychiatrist Dr. Prasad. (Doc. 13 at 15-16).

An ALJ can properly rely on the testimony of a non-examining medical expert in order to make sense of the record. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *Dalton v. Colvin*, 2014 WL 301443 at * 6 (S.D. Ohio Jan. 28, 2014), report and recommendation adopted, 2014 WL 661597 (S.D. Ohio Feb. 19, 2014). An ALJ's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Barker v. Shalala*, 40 F.3d 789, 794–95 (6th Cir. 1994); *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308–09 (6th Cir. 1990); *Majors v. Colvin*, 2014 WL 1238477 at * 6 (N.D. Ohio March 25, 2014).

However, in formulating the RFC, ALJs "are not required to adopt any prior administrative medical findings" made by State agency medical or psychological consultants, or other program physicians or psychologists. 20 C.F.R. § 404.1513a(b)(1). *See also* 20 C.F.R § 404.1527(e). Because "our Federal or State agency medical or psychological consultants are

highly qualified and experts in Social Security disability evaluation," ALJs must consider their findings and opinions. *Id.* When doing so, an ALJ will evaluate the findings using the relevant factors in §§ 404.1520b, 404.1520c and 404.1527, such as the consultant's medical specialty and expertises, the supporting evidence in the case record, consistency of the consultant's opinion with evidence from other sources in the record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. 20 C.F.R. § 404.1513a(b)(2). Finally, an ALJ must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant unless a treating physician's opinion has been accorded controlling weight. See 20 C.F.R § 404.1527(e).

In the present case, the ALJ properly weighed Dr. Comley's opinion and substantial evidence supports his decision to afford it "some weight." Plaintiff essentially maintains that the evidence weighs in his favor, and, as outlined above, he cites numerous findings by Dr. Comley, his counselors, and Dr. Prasad, which he claims support Dr. Comley's opinion that Plaintiff had marked limitations in his ability to accept instructions and tolerate criticism. In response, the Commissioner also cites numerous findings to support her argument, noting numerous instances where Plaintiff showed improvement, made progress, or exhibited behavior showing his impairment was not as severe as Dr. Comley opined. Under the applicable standard, the Court does not review *de novo* or reweigh the evidence. The pertinent question is whether is whether substantial evidence supports the Commissioner's conclusion – that is, whether there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. Even if the evidence could support another conclusion, this Court will not reverse the Commissioner's decision if the evidence reasonably supports the conclusion

reached.  *Id.*  Thus, assuming Plaintiff is correct that the evidence he cites supports the conclusion that Plaintiff had marked limitations, it is largely irrelevant so long as there is substantial evidence to support the the Commissioner's conclusion that his limitation was merely moderate.

Upon review of the record and the ALJ decision, it is evident that the ALJ reviewed the entire record and reasonably concluded that Dr. Comley's opinion did not merit full credence. As pointed out by the ALJ, Dr. Comley's opinion was not based on a clinical assessment established over a period time.  And, viewed over time, Plaintiff's treatment notes provide adequate evidence to support the ALJ's conclusion that Plaintiff's impairment was not as severe as Dr. Comley opined.  For instance, records of Plaintiff's counseling sessions also provide reasonable support for the ALJ's decision not to fully credit Dr. Comley's opinion.  While Plaintiff routinely complained of his difficulties getting along with people, in March 2014, Plaintiff's counselor noted that Plaintiff was open and less angry during the session.  (Tr. 665). Plaintiff told his counselor that he was proud of himself that during a recent social situation he avoided an altercation with an individual who provoked him.  (Tr. 665).  According to the counselor, "[t]he client made a good choice and did not fight, told the truth, and the police did not bother him."  (Tr. 665).  In June 2014, the counselor noted that Plaintiff was "improving" and becoming "more comfortable with the therapist."  (Tr. 592).

Further, in December 2014, Plaintiff reported feeling better after a medication adjustment.  (Tr. 635).  Plaintiff reported that he had been going out in public a little recently and that he was making an effort to be happier and that he sleeps a lot.  (Tr. 632).  His counselor noted that Plaintiff "was more alert and carried on a coherent conversation.  He reports having

some bad days but feels better." (Tr. 635). His levels of anxiety, depression, and impaired judgment were reported as mild. (Tr. 635). He had no problems with agitation, delusions, or orientation. (Tr. 635). He showed "good" participation levels. (Tr. 635). Dr. Prasad noted that while Plaintiff experienced some depression during the holidays, he went to visit his parents at Thanksgiving. (Tr. 633). While his anxiety was reportedly up and down, Dr. Prasad concluded he was "stable" and showed "significant improvement." (Tr. 634). In March 2015, the counselor noted that Plaintiff "showed great improvement" over their time together. (Tr. 606). Dr. Petrilla reported that Plaintiff was getting counseling, and that overall Plaintiff had a "good winter" until his father died a few weeks prior. (Tr. 539).

The above evidence, which was described by the ALJ, represents a longitudinal picture of Plaintiff's condition over the course a year. This is evidence that a reasonable mind might accept as adequate to support the conclusion that Dr. Comley's opinion did not merit more than some weight. While certainly there is contrary evidence on the record,[2] the issue here is one of a

---

[2]     In his reply brief, Plaintiff highlights the following evidence in particular:

- He doesn't leave his house unless he absolutely has to (Tr. 36-37);

- He watches the cars at Save-a-Lot and waits to go in if there is even 3 people in the store (Tr. 37); when he has to go in to get a few things he does so as quickly as possible, usually less than 10 items (Tr. 39); sometimes he has just left his cart and walked out of a store (Tr. 40); he feels like people are looking at him (Tr. 52);

- His sister visits but he is spent after 15 minutes (Tr. 37); He tried to eat at a restaurant about five or six months before the hearing but that didn't work out real well. (Tr. 40); he lasted 30-45 minutes and ended up almost getting into an altercation with another person there and had to leave; he was with his uncle at the time (Tr. 41, 45);

- If his doctor's waiting room is too crowded, he will wait in the parking lot; even at the hearing he came and left a couple of times and finally isolated himself at

matter of degrees – it is the difference between Dr. Comley's opinion of marked limitations in a single area of functioning and the state agency reviewers' and the ALJ's finding of moderate limitations.  Notwithstanding the evidence highlighted by Plaintiff, the Court concludes, given the above described evidence, that the ALJ acted within the permitted "zone of choice" when rejecting Dr. Comley's opinion that Plaintiff had a marked limitation.

Further, although the ALJ did not credit Dr. Comley's opinion as to this particular area of functioning, he otherwise gave the opinion some credence, and this was reflected in the assigned RFC.  The ALJ recognized Plaintiff's severe impairments, which consisted of depression, panic disorder, agoraphobia, and explosive personality disorder.  In formulating the RFC, the ALJ reasonably accommodated Plaintiff's limitations that stem from these impairments. Plaintiff was limited to routine and repetitive tasks with no production pace; he was limited to occasional contact with supervisors and co-workers and no contact with the public.

In sum, the Court concludes that the ALJ did not err by assigning "some weight" to Dr. Comley's opinion.

**B.**      **Whether the ALJ properly evaluated the opinions of the state agency reviewers**

Plaintiff argues that the ALJ's assessment of the opinions of the state agency reviewers was erroneous.  Upon review, the Court concludes that any error that occurred with respect to the ALJ's assessment of these opinions was harmless.

---

the farthest end of the waiting room (Tr. 51);

-      He does not talk to neighbors (Tr. 51-52); he doesn't have friends but he talksto his uncle and his mom and sister "once in a great while." (Tr. 52).

On December 5, 2013 and March 19, 2014, respectively, state agency psychologists Janet Souter, Psy. D, and Tonnie Hoyle, Psy. D, reviewed the record and opined that Plaintiff had moderate restrictions in carrying out activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and had no episodes of decompensation; and that he was able to handle social interactions with moderate limitations, and that limitations from stress intolerance and anxiety require work that did not impost stringent pace/production expectations.. (Tr. 63, 64, 66, 76, 78). Dr. Hoyle also opined that he was capable of understanding and remembering simple to moderately complex (3-4 step) work instructions. (Tr. 78).

In the administrative decision, the ALJ assessed these opinions as follows:

> I give great weight to the State agency consultant's psychiatric review technique noting moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation. The State agency consultants noted that while the claimant is on medication for anxiety, he is able to handle social interactions with moderate limitations (Ex. IA, 3A).

(Tr. 21).

Plaintiff argues that this analysis is erroneous because the ALJ failed to acknowledge that the state agency psychologists had not reviewed a complete record when rendering their opinions. In particular, Plaintiff notes that neither Dr. Souder nor Dr. Hoyle were able to review Plaintiff's records from his counselor Todd Curtis who performed an initial diagnostic assessment of Plaintiff on March 19, 2014 (the same day that Dr. Hoyle completed her opinion). (Tr. 575).

"There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*,

2011 WL 13918 at * 4 (6th Cir. Jan. 4, 2011). Rather, the Sixth Circuit requires only "some indication that the ALJ at least considered [later treatment records] before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007)). *See also Kepke v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 625, 632 (6th Cir. 2016) (stating *Blakley* requires "only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record.").

In the present case, Plaintiff is correct that the state agency psychologists did not have the opportunity to review Plaintiff's counseling records. And, based on the ALJ's written decision, there is no explicit indication that the ALJ considered that this was the case. However, to the extent this was error, the Court concludes it was not fatal. The Sixth Circuit has held that an ALJ's failure to explain his reasons for accepting the opinions of state agency reviewers who had not reviewed the entire record is not *per se* error. In *Keeton v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 515, 531 (6th Cir.2014), the Sixth Circuit held that the ALJ's "fail[ure] to articulate any reasons for elevating part of [a non-examining source]'s opinion over the other opinions in the record" did not constitute reversible error, even though the source conducted only "a partial review of [the claimant]'s medical records," because the non-examining source's opinion was consistent with the record, not inconsistent with the opinions of treating sources, and "it is difficult to say that the ALJ's failure to include a full explanation for adopting [the] opinion prejudiced Plaintiff on the merits or deprived him of a substantial right."

In this case, similar to *Keeton*, the opinions of the state agency psychologists are not inconsistent with the record as a whole. Importantly, while the state agency reviewers did not have the benefit of Plaintiff's counseling records, the ALJ clearly did, and he discussed them at length. As discussed above, many of the notes from Plaintiff's counseling sessions in fact supported the ALJ's conclusion that Dr. Comley's opinion only deserved "some weight," and the Court has already concluded that the ALJ did not err by discounting that opinion. Plaintiff fails to explain, and it is not readily apparent how, on the whole, the counselor's treatment notes undermine the opinions of the state agency psychologists. Thus, it is not evident that Plaintiff was prejudiced. Accordingly, the Court concludes that the ALJ did not reversibly error in his reliance on the opinions of the state agency reviewers.

**C.        Whether the ALJ erred when evaluating Plaintiff's subjective symptoms**

Finally, Plaintiff maintains that the ALJ failed to properly evaluate his credibility with respect to the assertion that the RFC should have limited him to no contact with co-workers. Plaintiff maintains that this particular limitation is material because the VE testified that a person limited to no contact with co-workers would be precluded from competitive work.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("noting that "credibility determinations regarding subjective complaints rest with the ALJ"). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported

by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96–7p, Purpose Section, 1996 WL 374186 (July 2, 1996); *see also Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").[3]

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* 20 C.F.R. §404.1529; SSR 96–7p, Purpose, 1996 WL 374186 (July 2, 1996). Beyond medical evidence, there are seven factors that the ALJ should consider.[4] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F. Supp.2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

In this case, the ALJ addressed Plaintiff's credibility as follows:

---

[3] SSR 16-3p similarly provides that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029 at *9.

[4] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96–7p, Introduction and SSR 16-3p, 2016 WL 1119029 at * 7; *see also Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 732–733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

After careful consideration of the evidence, I find that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 17-18). The ALJ explained one of those reasons as follows:

During an office visit on September 24, 2012, Eugene Petrilla, D.O., indicated that the claimant attributed his inability to obtain employment due to panic and worry; however, Dr. Petrilla noted his principle concern was an inability to find a job due to multiple convictions in his history.

* * *

During a subsequent office visit on March 14, 2013, Dr. Petrilla noted the claimant felt better on Xanax, but reiterated that he could not find a job due to his felony record.

(Tr. 18).

Plaintiff first maintains that his concerns regarding his felony record cannot serve as a basis for discounting his credibility because those concerns were expressed prior to his alleged onset date. The Commissioner does not dispute that these facts precede the alleged onset date and that they cannot be used to reasonably discredit Plaintiff.

The Court accepts Plaintiff's assertion that his statements regarding his felony record do not properly relate to the credibility analysis. However, this is not to say that the ALJ otherwise failed to address Plaintiff's subjective claims of disability, as the Court disagrees with Plaintiff's second argument that the ALJ failed to assert any other reasons for discounting Plaintiff's subjective reports of symptoms and mental limitations. As described above in the section relating to the opinion of the consultative examiner, the ALJ cited sufficient record evidence that reasonably serves to undermine Plaintiff's subjective claims.

For instance, in March 2014, Plaintiff was open and less angry during a counseling session and he was proud of himself that he avoided an altercation with an individual who provoked him. (Tr. 665). In June 2014, Plaintiff was "improving" and becoming "more comfortable with the therapist." (Tr. 592). In December 2014, Plaintiff felt better after a medication adjustment, was going out in public a little, was making an effort to be happier, and "was more alert and carried on a coherent conversation." (Tr. 632, 635). His levels of anxiety, depression, and impaired judgment were reported as mild, and he had no problems with agitation, delusions, or orientation, and he showed "good" participation levels. (Tr. 635). His psychiatrist noted that while Plaintiff experienced some depression during the holidays, he visited his parents at Thanksgiving. (Tr. 633). While his anxiety was reportedly up and down, the psychiatrist concluded he was "stable" and showed "significant improvement." (Tr. 634). In March 2015, the counselor noted that Plaintiff "showed great improvement" over their time together. (Tr. 606). His doctor reported that Plaintiff was getting counseling, and that overall Plaintiff had a "good winter" until his father died a few weeks prior. (Tr. 539).

The Court concludes that the above described evidence reasonably undermines Plaintiff's subjective claims of disability. While Plaintiff complains that the ALJ did not discuss some of evidence that he claims could reasonably support the opposite conclusion[5], the ALJ is

---

[5]     Plaintiff points to evidence that he "constricts his daily activities to try to relieve his symptoms, which include depression, anxiety, panic attacks, and paranoia," Tr. 598, 646, 651; that he "stays at home and does not leave unless he absolutely has to," (Tr. 36-37, 604); that "[h]e makes excuses to his eight year- old son about why they do not go anywhere, or even just play outside," (Tr. 41, 44, 596); that he "takes multiple medications: Xanax to treat anxiety, Effexor to treat depression, and Zyprexa to treat psychosis," (Tr. 529, 642, 646); that "[h]e has regular appointments with a counselor and a psychiatrist," (Tr. 573-665); that his "mental health providers noted that his paranoia continued, he had suicidal ideation at

not obligated to explicitly discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, under the substantial evidence standard this Court may not review *de novo* or reweigh the evidence. The only question is whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. Here, based on its review of the record and the ALJ decision, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective claims did not merit full credence.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

  *s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: August 10, 2017

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

times, and his anxiety was persistent." Tr. 598, 617, 621).

27